UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

May 2, 2024

LETTER TO ALL COUNSEL OF RECORD

Re: *Erika P. v. Martin O'Malley, Commissioner, Social Security Administration*
Civil No. 23-0924-CDA

Dear Counsel:

On April 5, 2023, Plaintiff Erika P. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 7) and the parties' briefs (ECFs 10, 12 & 13). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on August 5, 2019, alleging a disability onset of April 12, 2019. Tr. 249–58. Plaintiff's claims were denied initially and on reconsideration. Tr. 71–72, 93–94. On May 6, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 47–70. Following the hearing, on September 22, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 12–39. The Appeals Council denied Plaintiff's request for review, Tr. 1, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.  THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this

---

[1] 42 U.S.C. §§ 301 et seq.

process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "ha[d] not engaged in substantial gainful activity since April 12, 2019, the alleged onset date[.]" Tr. 18. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of left hip with tear; attention deficit hyperactivity disorder (inattentive type) ("ADHD"); depressive disorder; anxiety disorder; obstructive sleep apnea; migraine headaches; obesity; and osteoarthritis of the left knee[.]" Tr. 18. The ALJ also determined that Plaintiff suffered from a non-severe impairment of leg length discrepancy. Tr. 18. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 18. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs, but never climb ladders/ropes/scaffolds. She can occasionally balance, stoop, kneel, crouch, crawl, bend and/or twist. She can have no concentrated exposure to hazards such as unprotected heights and moving machinery. She is limited to simple, routine and repetitive tasks, with no public contact and occasional interactions with co-workers and supervisors. She requires a cane to walk.

Tr. 20. The ALJ determined that Plaintiff was unable to perform past relevant work as a Contract Clerk (DOT[2] #119.267–018) but could perform other jobs that existed in significant numbers in the national economy. Tr. 31–32. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 33.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive .

---

[2] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Erika P. v. O'Malley*
Civil No. 23-0924-CDA
May 2, 2024
Page 3

. . ." 42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.     ANALYSIS

Plaintiff raises two arguments on appeal.  Specifically, Plaintiff contends that the ALJ's decision is unsupported by substantial evidence because after finding at step three Plaintiff had a moderate limitation in (1) maintaining concentration, persistence, or pace ("CPP") and (2) adapting or managing oneself, the "ALJ erred by failing to include a corresponding limitation in her RFC assessment or explan[ation] why no such limitation was necessary."  ECF 10, at 1.  Defendant counters that substantial evidence supports the ALJ's RFC finding, supporting the ALJ's determination that Plaintiff is not disabled.  ECF 12, at 6.

In this case, the Court finds that substantial evidence supported the ALJ's decision.  When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)."  *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)).  CPP concerns "the abilit[y] to focus attention on activities and stay on task age-appropriately."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3).  Adapting or managing oneself concerns "the ability[y] to regulate emotions, control behavior, and maintain well-being in a work setting."  *Id.* § 12.00(E)(4).  A "moderate" limitation in both categories means that a claimant's ability to sustain CPP or adapt and manage oneself "independently, appropriately, effectively, and on a sustained basis is fair."  *Id.* § 12.00(F)(2)(c).

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020).  An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations.  *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in [CPP] courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations).  However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions.  *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017).  For these reasons, the Court has recognized that where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how [the] plaintiff could maintain CPP

while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

An ALJ must adequately review the evidence, then explain his or her decision. "*Mascio* does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, *Mascio* underscores the ALJ's duty to adequately review the evidence and explain the decision . . . ." *Jones v. Colvin*, No. 14-0273, 2015 WL 5056784, at *10 (W.D. Va. Aug. 20, 2015). Here, at step three, regarding CPP, the ALJ concluded Plaintiff had a moderate limitation. Tr. 19. Plaintiff "admitted she could prepare simple meals, drive when necessary, do some limited chores, shop in stores and by computer, use public transportation, handle some finances and listen to audiobooks[.]" *Id.* However, Plaintiff alleged "she had trouble reading/emailing, concentrating, staying on task, focusing, completing tasks, understanding and following instructions[.]" *Id.* Plaintiff's treatment records and examinations "revealed intact concentration and attention," but the ALJ determined that "in light of her cognitive deficits in the April 2020 testing," the ALJ concluded, based upon these observations and other evidence in the record, that Plaintiff required a moderate limitation in CPP. *Id.*

The ALJ then, at step three, concluded that Plaintiff had a moderate limitation in adapting or managing oneself. Tr. 20. Plaintiff's treatment notes and examination reports did not reveal any issues getting along with providers nor did the records contain any concerns with hygiene or grooming. *Id.* Plaintiff "admitted [that] she could handle some personal care activities," and the ALJ noted that most of her limitations appeared to be attributed to Plaintiff's physical, rather than mental, limitations. *Id.* However, Plaintiff "endorsed issues managing her emotions, handling stress/changes and getting along with others[.]" *Id.* The ALJ went on to consider some evidence of "obsessive and paranoid features, as well as underlying sleep/energy deficits and social anxiety[.]" *Id.* The ALJ went further than many of Plaintiff's examining and consulting medical providers by including a limitation in this area due to Plaintiff's testimony. Tr. 20–29. Thus, the ALJ concluded Plaintiff had a moderate limitation. Tr. 20.

In assessing the RFC, the ALJ limited Plaintiff to "sedentary work . . . simple, routine and repetitive tasks, with no public contact and occasional interactions with co-workers and supervisors." Tr. 20.

Plaintiff correctly observes that the ALJ "must either include a corresponding limitation in the RFC assessment or explain why no such limitation is necessary." ECF 10, at 1. Contrary to Plaintiff's assertion that remand is warranted because the ALJ failed to address Plaintiff's moderate limitation in CPP and adapting and managing oneself, the Court finds that, in this case, the ALJ did not commit harmful error at step three and provided substantial evidence for this Court to review. The ALJ's in-depth review of the evidence,[3] robust narration and consideration of

---

[3] The ALJ discussed in detail the psychological evaluations performed by the state agency psychological consultants, Plaintiff's adult function report and her testimony, activities of daily living ("ADLs"), and sufficiently explained why the limitation to simple, routine repetitive tasks, with no public contact and occasional interactions with co-workers and supervisors accounted for

*Erika P. v. O'Malley*
Civil No. 23-0924-CDA
May 2, 2024
Page 5

Plaintiff's mental health records, and reliance on state agency psychologists' opinions when crafting the RFC, provided ample support for the functional limitations incorporated therein, thus enabling the Court to perform meaningful review. *See Shinaberry*, 952 F.3d at 121 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019)) ("The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case."); *Sizemore*, 878 F.3d at 80–81 (rejecting argument that remand was required under *Mascio* because the ALJ failed to specifically account for claimant's moderate difficulties with regard to [CPP], because more detailed medical findings provided substantial support for the RFC limitations.). Furthermore, regarding the limitation in adapting and managing oneself, Plaintiff's reliance on *Mascio* falters because the directives of that case do not necessarily apply beyond the CPP context to the other functioning areas. *See Kimberly B. C. v. Kijakazi*, No. 22-617, 2023 WL 4974033, at *5 (M.D.N.C. Aug. 3, 2023) (stating that it remains unclear whether *Mascio* applies to "limitations in broad functional areas other than CPP.").

The ALJ first analyzed Plaintiff's testimony and ADLs. The ALJ noted that Plaintiff had trouble concentrating due to her migraines. Tr. 21. Plaintiff noted she experienced headaches 25 out of 30 days per month. *Id.* In her function report, Plaintiff alleged severe attention deficit disorder ("ADD") and trouble staying on task and focusing, stating she could only pay attention for a few minutes. *Id.* The ALJ analyzed Plaintiff's ADLs stating "despite [Plaintiff's] alleged symptoms and limitations, [she] admitted she could:"

> prepare frozen meals, do some cleaning and laundry in small bursts, shop in stores and by computer, drive when physically able (but not when in severe pain), use public transportation, go out alone, handle some finances, watch television, listen to audiobooks, attend aquatic therapy and socialize with friends 2-3 times per month (Exhibit 6E). In a December 2019 examination, she admitted she could generally independently engage in all activities of daily living, though she noted pain with physical limitations (Exhibit 15F). In another December 2019 examination, she admitted she could independently shower, dress and bathe herself, watch television and read, but limited her cooking/cleaning to once per week and noted she could shop but was limited due to pain (Exhibit 16F). The objective medical evidence, discussed below, certainly reveals numerous medical and mental impairments that warrant limiting her to a range of sedentary work, but which do not reveal work-preclusive limitations.

Tr. 22. The ALJ then discussed Plaintiff's treating psychologist and assigned persuasive value to various state psychologists.

The ALJ explained in detail Plaintiff's mental health complaints and supporting treatment records. Plaintiff's treating psychologist found that Plaintiff had "difficulty with sustained

---

Plaintiff's mental impairments and moderate limitations in both CPP and adapting and managing oneself. *See Shinaberry*, 952 F.3d at 121.

attention, rapid processing of complex stimuli, verbal learning/memory, organizing/expressing thoughts and feelings under stress and with performing to her capacity for many multistep and complex tasks for which she had not had adequate training and reasonable accommodations." Tr. 27. The ALJ included that "reasonable accommodations" reportedly included "structured/systematic training, audio/audio-visual recording of training instruction and feedback, clear instruction, frequent breaks, training/work assignments in an environment with minimal distractions, liberal telework opportunities, flexible work schedule, extended time to complete assignments and advance notification for assignments." *Id.* In December 2019, Dr. Kelsey Ball conducted a consultative examination. Tr. 27–28. Dr. Ball's mental status examination revealed that Plaintiff was "cooperative with an adequate manner of relating, and she demonstrated good hygiene and grooming, normal posture and motor behavior and appropriate eye contact." *Id.* Dr. Ball determined that Plaintiff had "adequate expressive and receptive language skills, coherent and goal-directed thought processes with no evidence of perceptual disturbances, clear sensorium, full orientation, good insight/judgment, generally intact attention, concentration and memory and average estimated cognitive functioning, though she had a labile affect, was intermittent tearful and described an anxious and euthymic mood." *Id.* A second examination completed by Dr. Ball revealed that Plaintiff had "unimpaired judgement, no significant memory impairment and normal affect[.]" Tr. 28. The ALJ then discussed several other interactions with mental health providers. After considering Plaintiff's mental impairments, "including both her cognitive limitations and interpersonal deficits, the [ALJ found] she [was] limited to simple, routine and repetitive tasks, with no public contact and occasional interactions with co-workers and supervisors." Tr. 28.

The ALJ turned to the medical opinions and prior administrative findings in detail. Tr. 28–31. First, the ALJ adopted Dr. Ball's medical opinion, finding it persuasive. Tr. 29. Dr. Ball determined that Plaintiff had a moderate limitation with regard to CPP in addition to complex directions, sustaining ordinary routine and regular attendance at work, regulating emotions, controlling behavior, and maintaining well-being. *Id.* The ALJ adopted these limitations and explained that the record supports a finding that Plaintiff would have "greater difficulty with more complex tasks but retains the capacity to perform simple, routine tasks as supported by her intact cognitive abilities upon mental status examination at multiple office visits . . . ." *Id.* The ALJ included additional limitations, not included by Dr. Ball, for interpersonal restrictions due to Plaintiff's anxiety and irritability that caused an impairment regulating her emotions and controlling her behavior. *Id.* Dr. Ball concluded that Plaintiff's psychiatric and cognitive problems did "not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." Tr. 908.

Next, the ALJ found persuasive the opinion of Dr. Patricia Cott, a state agency psychological consultant. Tr. 31. Dr Cott determined that Plaintiff had a moderate limitation in CPP and a mild limitation in adapting or managing oneself. Tr. 76. Dr. Cott opined that Plaintiff would have difficulty with "independently-[c]ompensating for inadequate training or training that does not provide reasonable accommodations for her attention and language-based learning disability, completing tasks in a timely manner without reasonable accommodations such as extended time, flexible work schedule and a work environment that minimizes distractions, rapid processing of multistep complex tasks." Tr. 75. Dr. Cott stated that Plaintiff had good eye contact

and speech during her examination, and that she was anxious, but maintained good attention and concentration. Tr. 85. Overall, Dr. Cott opined that Plaintiff be limited to simple, routine tasks as supported by Dr. Cott's examination, Plaintiff's documented cognitive and interpersonal deficits, adequate consideration to Plaintiff's residual abilities and lower level of mental health treatment, and references to clinical findings and Plaintiff's treatment history. Tr. 31. Again, the ALJ further limited Plaintiff to a moderate restriction in adapting and managing oneself.

The ALJ's adoption of these opinions both "provided substantial support" for the RFC assessed in this case. *See Sizemore*, 878 F.3d at 80–81 (affirming an ALJ's decision where: (1) the ALJ adopted, without explanation, certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned persuasive value to the opinion); *Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis[.] Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in determining [the claimant's] RFC.").

Also, a comparison to *Mascio* reflects the errors in Plaintiff's argument that the ALJ's decision is unsupported. In *Mascio*, the ALJ found that the claimant had moderate limitations in CPP. Unlike here, the ALJ "ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain [CPP]" when he conducted the function-by-function analysis. 780 F.3d at 633. "[B]ecause the ALJ ... gave no explanation" for these omissions, "a remand [was] in order." *Id*. at 638. *See Shinaberry*, 952 F.3d at 121 (affirming the ALJ's decision when the ALJ "sufficiently explained why the mental limitation to simple, routine, repetitive tasks accounted for Shinaberry's [mental] disability and her moderate limitations in [CPP]").

The ALJ's reliance on substantial evidence and a robust discussion of Plaintiff's record in assessing the RFC permits meaningful review for the reasons explained above. A reasonable mind would accept the evidence provided as sufficient to support the ALJ's conclusion. *See Laws*, 368 F.2d at 642. Against this backdrop, the Court also considers that Plaintiff failed to identify the harmful error resulting from the ALJ's failure to provide a narrative discussion explaining the RFC's accommodation of Plaintiff's paragraph B limitations. *See generally* ECF 10. Nor does Plaintiff identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. *See generally id.* Therefore, Plaintiff has not met their burden of proof. *See Hancock*, 667 F.3d at 472 ("The claimant has the burden of production and proof in Steps 1–4."). Accordingly, remand is unwarranted because the Court's review is not "frustrate[d]" by "inadequacies in the ALJ's analysis[.]" *Mascio*, 780 F.3d at 636.

## V.     CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge